It is not legally permissible to impose a sentence of 25 years to life on a defendant for being unable to control recidivism due to severe mental illness. It is permissible to impose a 25-year-to-life sentence based on conviction of the misdemeanor in this case if the court is punishing recidivism, but when the defendant is severely mentally ill, as in this case, paranoid schizophrenia, and there is a strong indication that the defendant is unable to control his impulses and unable to control his recidivism, going ahead and giving him that sentence without taking that diminished capacity into effect, into account, and without mitigating that in some way, constitutes cruel and unusual punishment. Robertson v. California. Robertson, California, 370 U.S. at 666-667. It says the State law which makes it a criminal offense to be mentally ill constitutes an infliction of cruel and unusual punishment. Robertson dealt with drug addiction. Yes, it did. It did deal with drug addiction, but it also mentioned other things. It specifically said that a State law which makes it a criminal offense to be mentally ill constitutes an infliction of cruel and unusual punishment. That's a step away from where we are in this case, isn't it? Well, not really. Do you have a case that follows or cites Robinson that's like the case we have before us today, where there may be or is a mental defect, but the person has actually committed a crime? Sure. Separate and apart from their mental illness. I believe. Robinson was a status offense. That's the problem the Supreme Court had with it, wasn't it? California at the time made it a crime to be a drug addict. And the Supreme Court said you can't do that. Right. And the Supreme Court also said that punishing a person for one day, putting them in prison for one day for having a common code constitutes cruel and unusual punishment. And a balanced position in this case is that punishing Mr. Joshua for being unable to control his conduct because it's clear that he has diminished capacity to control his conduct. Brings this case into the very same category simply because the California Court of Appeal in its analysis of cruel and unusual punishment failed to take into account in any way whatsoever the diminished capacity of Mr. Joshua to control his conduct. And if I repeat my colleague's question, what's your best case to support the argument you just made? Well, Robinson supports it. On top of that, I believe that Atkins v. Virginia supports it, 536 U.S. at 318. Of course, that shows Atkins says you can't convict a person of a capital offense who has a diminished capacity. Do you show in this case that your client was mentally retarded or just suffering from a mental illness? He was diagnosed. It's right here in the excerpts of the record. He was diagnosed as being paranoid schizophrenic. I know, but he wasn't mentally defective. Well, he had a mental illness, right, but he wasn't retarded like Atkins was. He had a severe mental illness. He'd been in psychiatric hospitals approximately 10 years. He had suicidal ideas. He heard voices often. When asked if he could take over his own defense, he said he couldn't because Bush would take over. I submit that this makes him unable to control his conduct in the same way that a normal person can control their conduct. And therefore, that raises squarely to me, it raises squarely the issue of diminished ability to control impulses. He walked into a supermarket. He saw some bottles of alcohol. He took them. He walked out. He was exercising absolutely zero impulse control at the time. You know, that be raised at the first trial court as a defense if he has an insanity defense, and that be raised. It was it was raised in sentencing and it was ignored. It was it was raised. It was raised again before the California Court of Appeal. And they just ignored it. They they acknowledge the fact that there was a a psychiatric confidential report in the file diagnosing the defendant as a paranoid schizophrenic. They acknowledge that they can. Can I ask that they fail to apply it in any way whatsoever to the cruel and unusual punishment analysis? I mean, look. Common sense indicates. I'm sorry, common sense in this direction, common sense indicates that the defendant has to have some difficulty in controlling his impulses. That's clear. No, no real thorough evaluation was made as to what extent that impacted on his recidivism. And that's the problem here. Here's your problem with this case. Let me be clear about it. We're here on habeas and and either you've got a Teague problem because you're asking us to apply a new rule that didn't exist at the time your client was sentenced, or you've got an EPPA problem because there's there's I think, as you'll have to concede, at the time he was sentenced, there was no case from the United States Supreme Court saying what you're arguing here today. And that is someone with a mental impairment that can't control their behavior can't be convicted of a felony. But that's not what I'm saying. I thought that was Hornbook law. I'm sorry. I said I thought that was Hornbook law. What, that you can't be convicted? Jeff, why do we have to have a Supreme Court case with this Hornbook law that mental people with mental illnesses cannot commit a crime? Is that the law? No, that isn't the law. No, they can't commit a crime. They can commit a crime, but it's his fault. He drew me over. They can commit a crime. But if they have, as the Atkins court said, if they have diminished capacities to control their impulses, they therefore have diminished personal culpability. One has to go hand in glove with the other because we, at this point in time, we look at the situation. It's open and shut what happened. The facts are not in dispute. We know Mr. Joshua walked into the store. We know he took these bottles of alcohol. We know that he committed this crime of petty theft with a prior. But we don't know whether he was able to control himself at the time that he did it. If he was not able to control himself, that's a mitigating factor that should have been taken into account by the sentencing court and wasn't. And the failure to take that into account constitutes cruel and unusual punishment. It's true that Robinson doesn't say that in black letters, but it's also true to me that the analogy is so clear that I really don't understand why we're disputing it. I mean, to me, it's crystal clear. What is the evidence before the district court about his mental illness? Should I read you the read? Oh, just tell me. And the effect of his mental illness. He's been in Metropolitan State Hospital. What was the effect of his mental illness? What is the evidence of the effect of his mental illness presented before the trial court? Well, what it says is that he's been hospitalized for approximately 10 years in state psychiatric hospitals. He has suicidal ideas. He hears voices often. He felt that he couldn't take over his defense because someone else would take it over from him. So he's suffering delusions. That's clear. He's, according to the state of California, he's been. What was the, what was the testimony of the effect of his mental defect? There was none. Why not? That's a good question. Okay. You've got about 15 seconds left. You want to save a little bit of time for rebuttal? I'll save it. Okay. Thank you, counsel. We'll hear from the warden at this time. Mr. Glassman. Thank you. May it please the court. Judge Hawkins, I think that you have correctly identified the flaws in the argument here or the difficulties with this case. What I would like to do is add some context and explain what, in our view, the problem with the case is. As the court is aware, this case was originally here following a grant of relief from the district court. And during the time the case was pending in this court, the Supreme Court decided the Andrade case, as well as the Ewing case. And those cases foreclosed relief on the grounds asserted by petitioner on a general eighth amendment claim. And what we've seen the case sort of morph into is a more and more abstract and elaborate or ambiguous claim that somehow or other, because the specific factor of mental impairment, which was part of the general claim before and is now, I guess, the sole claim, that because of indications of mental illness in the defendant's background, the sentence is precluded as a matter of law under the eighth amendment. There are a variety of difficulties with that. As the court has already pointed out, there is no case law remotely suggesting that the penalty in this case is invalid. In light of the fact that the defendant had been diagnosed with a psychiatric condition at points in his past. On the contrary, there are only affirmative indications in this record. And this, I think, has been. Isn't there something haywire, just offensive, really, that somebody who steals two bottles of liquor ends up with an indefinite life in prison? Judge Ferguson, I think that that characterization doesn't. It's coupled with the fact that the governor is sending all his prisoners to some other states because the prisons are full. Is there something wrong with the prison system in California? Your Honor, I think that the. You're going to end up with prison for life. I think that a response to that is found in the statements of the trial judge that were not noted here. They were quoted by the court of appeal. And I'd like to read them because they address that factor. And I think they put it in context. If I could recite it, the court has discretion in this matter and the court has to exercise its discretion based on the totality of the circumstances. Not only the baddest record, but the present offense as well. And in exercising discretion, the court is required to exercise discretion appropriately and not to abuse discretion by doing so capriciously. Or because of the fact that someone could say 25 years in prison is a terrible term for someone who shoplifted and that's all this amounted to was shoplifting. That's all he was convicted of. But under the law, petty theft with a prior becomes elevated to a felony. And so, therefore, the court has a felony before it and has to look at the total record. And I pointed out to the gentleman who testified before us or gave a statement that the defendant has spent the best part of his life in prison. And one would think that after having spent 13 years in prison on the last sentence, that he'd be ready to turn over a new leaf. Some people become institutionalized or simply incapable of living within a free society. Mr. Joshua has demonstrated that's what he is. I just can't rationalize this and put it off to mental problems or addiction problems and say that that's all his problem is or that he is not a criminal or that he is simply someone who should be treated as a patient because he has had all these years in prison. But obviously, with some minor exceptions, he would necessarily have been alcohol free unless he got some illicit liquor somewhere. So he's been sentenced to six months to life. He's been sentenced to three years. He's been sentenced to four years. He's been sentenced to 25 years. And now he is back before the court under the three strikes law. The totality of the record, I feel, would simply be an abuse of discretion for the court to strike strikes and the motion to strike is denied. The court had before it his prior record. It had before it the evaluation of the doctor. The doctor did not describe him as insane, did not describe him as mentally incompetent. There was no mental defense, if you will, in the way that a mental defense is being asserted years later in this habeas corpus appeal. If those factors were going to be raised differently in a trial court, they could have been done differently by trial counsel.  The issue is whether this sentence complied with the controlling precedent and there is no precedent remotely like these facts. What did the doctor say was wrong with him at the time? The doctor indicated that he did assign the diagnosis of schizophrenia in the report that I'm aware of. He also indicated the defendant was competent to stand trial. There was no asserted defense of mental incompetence to stand trial, nor was there an asserted defense of insanity. To the extent that these, and in terms of the adequacy of the treatment, it was not alleged previously in this case that there was a failure to consider these factors as sufficiently mitigating. Rather, the claim as raised in the state court and as originally presented to this court was that it is simply unconstitutional as a matter of law to impose this type of sentence on this type of person. What kind of discretion does the trial court have in California under the three strikes law? Well, that's a, that is a, that's a question that requires an elaborate answer, Your Honor. But the court. I thought it was easy to answer him. Well, not for me, at least. If there are a variety of factors that the court can rely upon, the court is entitled to weigh the mitigating evidence involved. And it does have the power in what it deems appropriate circumstances to strike or to disregard a number of prior convictions. The point is that ultimately, if we're talking about an abuse of discretion, which is really what the standard becomes for appellate purposes, that's, I would suggest, far removed from the role of a federal habeas corpus court deciding whether or not a sentence as a matter of law is unconstitutional in light of Supreme Court precedent. Every case cited by this petitioner involves a totally different scenario. It either involves. Judge Wardlaw's opinion in Ramirez v. Castro. Well, Your Honor, that is a reiteration, I would suggest, of the, of the, that, that opinion, which I don't believe is relied upon by this petitioner, but that opinion, it seems to me, off the cuff, is probably at odds with the Ewing case. Ninth Circuit law. It is Ninth Circuit law. But in this ADPA context. I don't like it, but it's still Ninth Circuit law. Well, whether I like it or not, Your Honor, the Supreme Court and the ADPA have told us that we are bound in this context by Supreme Court precedent. And there is no Supreme Court precedent that this petitioner can point to. The Robinson case is a case about being convicted of being a narcotics addict or an alcoholic. That's not the case before us. In Ramirez, she quoted Solom. I'm sorry? In Ramirez, she quoted the Supreme Court case Solom. Yes, Your Honor. But this argument. That was the basis for her opinion. But the basis of. The Supreme Court case. The basis of this petitioner's argument, Your Honor, as I understand it, is that there was an, there was an inadequate consideration of this person's mental illness as a factor in the sentencing decision. That has nothing to do, if I recall the case correctly, with Judge Wardlaw's opinion. So that opinion, by the petitioner's reckoning, would not apply. What the petitioner says, we can't, we can't in our own determined injustice. Your Honor, I think that the petitioner is responsible for framing his claim of constitutional error. And he hasn't raised a generic claim other than his original claim, which was reversed by this court. Or what I submit is his new, his newer claim, which is strictly on the, in the area of this contention regarding mental illness. So that is the claim before the court. Yes. Okay. Thank you, Your Honor. Thank you for your argument. You've got a few seconds or so, counsel, for rebuttal. Yes. Very briefly, I would like to read the last paragraph of the psychiatric report because it's relevant. In effect, even though it is marginal, I feel that this man is in fact competent to stand trial, albeit that he is clearly psychotic and a substance abuser. Certainly he needs close psychiatric supervision with appropriate anti-psychotic medication on a lifetime basis. I submit that that presents a diminished ability to control his impulses. And finally, I want to end with Ford v. Rainwright, 477 U.S. 399, page 417. Justice Marshall says that it is no less abhorrent today than it has been for centuries to exact impendence. The life of one whose mental illness prevents him from comprehending the reasons for the penalty or its implications. I contend that that holding in Ford v. Rainwright, taken together with the holding in Robinson v. California, warrants. Okay. Mr. Joshua, thank you. Thank you for your argument, counsel. Thank you both. The case just argued will be submitted for decision.
judges: Ferguson, Siler, Hawkins